IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DONALD B. JOHN-MILLER,** § | **CIVIL ACTION NO. 4:19-CV-03752** |
| **INDIVIDUALLY AND D/B/A** § | |
| **EDAM GBERE INTERNATIONAL** § | |
| **SERVICES,** § | |
| **EDAM GBERE NIGERIA LIMITED,** § | |
| **D1 INTEGRATED SERVICES,** § | **JUDGE DAVID HITTNER** |
| **and,** § | |
| **CAROLINE MARINE** § | |
| **SERVICES, LTD.** § | |
| § | |
| **VS.** § | **MAG. JUDGE PETER BRAY** |
| § | |
| **AUSTIN HOWELL,** § | |
| **TIDEWATER MARINE** § | |
| **INTERNATIONAL, INC., and** § | |
| **TIDEWATER MARINE, LLC** § | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO
DEFENDANTS TIDEWATER MARINE, LLC'S AND
AUSTIN HOWELL'S MOTION TO DISMISS**

1. Plaintiff submits this memorandum in response to Defendants Tidewater Marine, LLC's and Austin Howell's motion to dismiss. Plaintiff asks the Court to deny Defendants' motion. In support, Plaintiff shows:

<u>Summary</u>

2. Plaintiff has established that it was his funds taken or kept by Defendants through his course of dealings with them. Howell orchestrated the arrangements where funds were not returned after contracts were canceled and also misrepresented

that additional funds were required to obtain a boat after Plaintiff had paid the $450,000 purchase price. The allegations in the state court petition contained the facts supporting the causes of actions, and directly stated how Defendants, both Tidewater Marine, LLC and Austin Howell, were responsible for Plaintiff's damages.

## Background

3.  Plaintiff, Donald B. John-Miller, is an individual doing business under several assumed or trade names. The assumed names are Edam Gbere International Services, Edam Gbere Nigeria Limited, D1 Integrated Services, and Caroline Marine Services, Ltd. Plaintiff resides in Harris County, Texas, and all events concerning the transactions made the basis of the lawsuit took place in Harris County, Texas. For clarity, Plaintiff is referred to as "Edam Gbere" since that was the name used for wire transfers.

4.  Howell, the non-diverse defendant at issue, is also a resident of Harris County, Texas. Howell is employed by Tidewater Marine, LLC ("TM"), at the Houston, Texas, office. While TM is a Louisiana company it has a principal place of business in Houston and has been registered to transact business in Texas since August 3, 1999. Tidewater Marine International, Inc. ("TMI") is purportedly a wholly-owned subsidiary of TM that is incorporated in the Republic of Panama. Howell's conduct, at issue in this case, was through the Houston office.

5.  The case involves Edam Gbere's contracts to purchase three merchant vessels that were all handled by Howell, an employee of TM, through the Houston office. Howell canceled two of the contracts but refused to refund the deposits Edam Gbere had made of $70,000 (for the Soyo Tide) and $100,000 (for the Montgomery Tide). The Lourdes Tide was purchased by Edam Gbere, which paid the full $450,000, but Howell demanded another $110,000 to release the boat. This demand was a direct breach of the contract. Howell misrepresented to Edam Gbere that the extra $110,000 was due because only one vessel was purchased under the contract, yet the contract expressly allowed the single vessel purchase at the set price of $450,000. At the time the lawsuit was filed, Defendants held $280,000 of Edam Gbere's funds through the TMI subsidiary as directed by Howell and his employer, TM.

6.  On August 28, 2019, Plaintiff sued Defendants for: (a) breach of contract; (b) unjust enrichment and constructive trust; (c) common law fraud and fraudulent inducement; and, (d) theft liability act violations. The case was filed in the 165th Judicial District Court of Harris County, Texas, under Cause Number 2019-61060. TM was served on September 6, 2019 by certified mail through its registered agent. Howell has evaded service on four attempts at his office address, 6002 Rogerdale, Suite 600, Houston, Texas 77072.

7.  On September 29, 2019, Defendants finally refunded a $70,000 deposit for the Soyo Tide to Edam Gbere absent any agreement or release. Part of the fraud and

theft claim included Defendants' keeping the deposit despite Howell canceling the contract. The next day, Defendants filed a notice of removal. The $100,000 deposit for the Montgomery Tide has not been refunded.

## Legal Standards

8.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). Dismissal under Rule 12(b)(1) is appropriate if the plaintiff lacks the requisite standing to sue. *See, e.g., Little v. KPMGLLP*, 575 F.3d 533, 540-41 (5th Cir. 2009) (affirming dismissal for lack of standing under Rule 12(b)(1)). When a Rule 12(b)(1) challenge is raised with other Rule 12 challenges, the court should consider the Rule 12(b)(1) arguments before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

9.  Motions to dismiss under Rule 12(b)(6) are appropriate only where the plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion under Rule 12(b)(6), a court must "accept [] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to

relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 1974. The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Analysis and Argument

*Standing*

10.   Defendants have asserted that Plaintiff lacks standing because he did not sign the contracts that are part of the claims. This is not true. As alleged by Plaintiff, he is doing business as the entities in the contracts and is the one who made the wire transfers that Defendants accepted and kept. This was made part of the factual allegations in *Plaintiff's Original Petition* (hereafter "*Petition*") in paragraphs 8-13. In fact, Defendants have provided the contract, *Ex. A* to their motion, that contains Plaintiff's signature as the purchaser for the Lourdes Tide. This gives Plaintiff standing to claim the breach of contract as well as the other causes of action. As to the other two contracts, Plaintiff, as Edam Gbere, pleaded that it was his money Defendants kept despite canceling the contracts. *Id*.

11.   As Defendants have provided additional evidence, because these documents were referred to in the *Petition*, Plaintiff provides the total wire transfer records for the three transactions. *Plf. Ex. A*. As these documents show, each wire transfer came from Edam Gbere International Services, indicating $710,000 was transmitted; only part of that amount remains in dispute, $210,000, now that a refund of $70,000 was made by Defendants after the lawsuit was filed. The assumed name, Edam Gbere International Services, is Donald John-Miller's assumed name as shown in Harris County's records. *Plf. Ex. B*.

*Stating Claims for Relief*

12. Defendants assert there is nothing but conclusory allegations while addressing, sometimes in detail, the factual allegations from the *Petition*. As Defendant has referred to the additional documents referenced in the *Petition*, Plaintiff will do the same. *See e.g., Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). For ease of discussion, each claim is addressed separately after first providing a brief history of the transactions.

13. Howell was the principal actor with regard to allegations in the *Petition*. For example, after a demand letter was sent, and a lawsuit filed, TM ordered a wire transfer for $70,000 be returned to Edam Gbere because Howell and TM had wrongfully kept those funds despite canceling the purchase contract for the Soyo Tide. (The Soyo Tide contract was between Sonatide Marine, Ltd.—a non-party—and D1 Integrated Services—a party—that was handled by Howell with the funds going to TMI.) The wire transfer was completed the day before TM filed its notice of removal. This "refund" of wrongfully kept money was just part of the basis for Edam Gbere's allegations. *Petition,* ¶10. Another part was the $100,000 kept by Defendants that was a deposit for Edam Gbere's purchase of the Montgomery Tide. *Id*. at ¶9. There, Howell canceled the contract four days before completion but kept the money. On the Lourdes Tide transaction, Howell claimed $560,000 was due, requiring an extra $110,000 for Edam Gbere to receive the vessel (which

Defendants' counsel, and Howell, contended was the revised "*en bloc*" purchase price—despite the contract stating otherwise). *Id.* at ¶8. Six weeks after the $450,000 had been paid on the Lourdes Tide, and after the June 5, 2019 wire transfer was made for the "extra" $110,000 (*id.*), Edam Gbere requested an invoice to account for the claimed increase, and Howell sent this invoice reflecting only a $450,000 purchase price (and including TM's logo) with no reference to the $110,000 he claimed was part of the purchase price, *Plf. Ex. C*:



*Breach of Contract Actions*

14.     Defendants' claims with regard to the breach of contract actions, or that TM and Howell are not responsible, are misleading. For the Lourdes Tide, the contract provides:

> **SECTION 17 - NOTICES.** All notices or communications required or permitted under this Agreement shall be deemed to have been duly given if: (1) Delivered by hand, courier or mail; or (2) sent by email to the following address:
>
> A.   If to Owner, to:  
> Tidewater Marine International, Inc.  
> c/o 6002 Rogerdale Rd., Suite 600  
> Houston, TX 77072-1655 - U.S.A.  
> Attn: Austin Howell  
> Email: ahowell@tdw.com
>
> With a cc to:  
> Mark Handin  
> Email: mhandin@tdw.com
>
> Attn: Bob Instone  
> Email: binstone@tdw.com
>
> Attn: Arthur McGimsey  
> Email: amcgimsey@tdw.com

For the Montgomery Tide, the contract provides:

> **SECTION 15 - NOTICES.** All notices or communications required or permitted under this Agreement shall be deemed to have been duly given if: (1) Delivered by hand, courier or mail; or (2) sent by email to the following address:
>
> A.   If to Owner, to:  
> PURPLE FLEET LIMITED  
> 6002 Rogerdale Rd., Suite 600  
> Houston, TX 77072-1655  
> U.S.A.  
> Attn: Austin Howell  
> Email: ahowell@tdw.com
>
> With a cc to:  
> Bob Instone  
> Email: binstone@tdw.com  
> Jeff Gorski  
> Email: jgorski@tdw.com

For the Soyo Tide, the contract provides:

> **SECTION 15 - NOTICES.** All notices or communications required or permitted under this Agreement shall be deemed to have been duly given if: (1) Delivered by hand, courier or mail; or (2) sent by email to the following address:
>
> A.  If to Owner, to:
> Sonatide Marine, LTD
> Edificio Rei Katyavala
> Rua Rei Katyavala, s/n
> Entrada B, 13 Andar
> Ingombota, Luanda, Angola
> Attn: Maria Samuel
> Email: maria.samuel@sonatide.co.ao
>
> With a cc to:
> Austin Howell
> c/o Tidewater Inc.
> 6002 Rogerdale Rd., Suite 600
> Houston, TX 77072, U.S.A.
> Email: ahowell@tdw.com
>
> Elton Steen
> Email: esteen@tdw.com
>
> Mark Handin
> Email: mhandin@tdw.com
>
> Bob Instone
> Email: binstone@tdw.com

15.     In each contract, Howell was the contact at TM (tdw.com), who was also listed for Tidewater Marine International, Inc. (TMI), and an entity called Tidewater, Inc. that was the pre-merger name for TM. Others with TM were also listed as contacts.

16.     The contracts for the Soyo Tide and Montgomery Tide were both canceled by Howell. It took a lawsuit to have the $70,000 deposit for the Soyo Tide to be refunded while the $100,000 is still being retained on the Montgomery Tide. Notice that the owner of the Montgomery Tide has the same office address as Howell, who is also the owner's contact. The $100,000 down payment was sent to TMI as Howell instructed and not to Purple Fleet Limited. *Plf. Ex. A*, p. 008. That is why Howell and TM (who wholly owns TMI) were sued when the deposit was not refunded after Howell canceled the contract. Purple Fleet Limited never received any funds. *Id.*

17.     As to the Lourdes Tide, addressed earlier, Howell claimed an extra $110,000 payment had to be made to secure the release of the vessel. *Plf. Ex. D*, p. 001. This

was based on Defendants' claim that purchasing only one of the listed vessels, instead of both for an *en bloc* price, somehow required an extra payment. There was never any written agreement for an extra payment, just the refusal by Howell to release the vessel until the money was wired. In fact, the contract states the opposite of Howell's *en bloc* claim. It says:

> **Section 2 - PURCHASE PRICE.** The Aggregate Price for the Vessels shall be the sum of One Million Two Hundred Thousand and 00/100 U.S. Dollars (USD $1,200,000.00), (hereinafter called the "Purchase Price"). Because the sale contemplated hereby is to be an en bloc transaction, if the sale of any of the Vessels falls through / fails to take place for any reason, Purchaser and shall still be obliged, subject to the other terms and conditions of this Agreement, to go through with the sale of the remaining Vessel(s) at the individual Allocated Purchase Price listed in Exhibit "A".

This expressly states, in the last sentence, that "if the sale of any of the Vessels falls through/fails to take place for any reason, Purchaser shall still be obliged…to go through with the sale of the remaining Vessel(s) at the **individual Allocated Purchase Price listed in Exhibit "A."** That exhibit shows:

| Vessel Name | IMO Number | Registered Owner | Allocated Purchase Price (USD $) |
|---|---|---|---|
| LOURDES TIDE (*) | 9269881 | POINT MARINE, L.L.C. | $450,000.00 |
| SOYO TIDE | 9371634 | SONATIDE MARINE, LTD. | $750,000.00 |
| | | TOTAL PURCHASE PRICE USD $1,200,000.00 | |

(*) Mortgaged

There was no "extra" or "*en bloc*" addition to the price as required by Exhibit "A." When Plaintiff paid the $450,000 for the Lourdes Tide, as required by Exhibit "A," Defendants still held the vessel hostage until more money was paid. All of the money

went to TMI's account in Houston, Texas. *Plf. Ex. A*, pp. 001-008. What Howell actually said on May 30, 2019 was this: "The prices for the boats were based on a 2 boat discount. I need to resend the price for the Lourdes on a single vessel basis." *Plf. Ex. D*, p. 001. As shown by the wire transfer payments, the $450,000 had been paid by May 1, 2019, with an extra $80,000 on May 2, 2019 and then $110,000 on June 5, 2019. *Id*. Two weeks after the extra payment, Howell sent the invoice showing the actual purchase price of $450,000 without any explanation for the contested charges or some *en bloc* price change. *Plf. Ex. C*. This unilateral price "change" was a direct breach of the contract, causing damages to Edam Gbere.

*Unjust Enrichment Claims*

18. The petition provides several allegations that Howell and TM were unjustly enriched by taking, and keeping, Edam Gbere's funds. *Petition*, ¶¶8-13. Receiving a higher price than the contract required, claiming that deposits were forfeited, or simply refusing to return a deposit after canceling a contract all show how Howell and his employer, TM, benefitted. Not to mention, TM owns all of TMI, the entity that kept the funds at Howell's direction.

19. Pleading alternative theories of recovery is an accepted practice in Texas. TEX. R. CIV. P. 47, 48. For the unjust enrichment claim, Defendants cite to *Protocol Techs., Inc. v. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex.App.—

Eastland 2013, no pet.) for the position that unjust enrichment fails as a matter of law, which is not entirely correct. That case went further, stating:

> **Generally**, a party may not recover under *quantum meruit* or unjust enrichment if there is an express contract that covers the services or materials furnished. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000); *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995)(additional citations omitted).
>
> The existence of an express contract is an affirmative defense to an equitable claim of *quantum meruit* or unjust enrichment. *Christus Health v. Quality Infusion Care*, 359 S.W.3d 719, 722 (Tex.App.—Houston [1st Dist.] 2011, no pet.); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 500 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

What is alleged here is that Defendants kept the funds after canceling two contracts. As Defendants have repeatedly asserted, TM and Howell were not actual signatories or parties to the contracts at issue, except for the Lourdes Tide where TMI was the seller, yet TMI received the wire transfers on the two canceled agreements, *i.e.*, Montgomery Tide and Soyo Tide. TMI, as both a party to one sale (Lourdes Tide) and a non-party to the others, refused to return the funds that had been paid by Edam Gbere. All the contracts were handled by Howell. Defendants, therefore, have kept funds they are not entitled to keep under any contract or theory. TM was able to get the Soyo Tide deposit refunded yet has refused to return the other funds.

*Common Law Fraud and Fraudulent Inducement Claims*

20.     Here, Defendants contend that Howell was not a proper party to the purchase agreements. The *Petition*, however, alleges that Howell was the person who conducted the transactions, including all **representations** about the additional amounts claimed and the refusal to make refunds after they were demanded. *Petition*, ¶¶8-13. It was these misrepresentations, together with keeping Edam Gbere's money, that caused Edam Gbere's damages. Their claim also goes against the language of the contracts where Howell was the agent and contact for the owners. Canceling the contracts did not entitle Howell to keep Edam Gbere's funds. Howell also did not have authority to require a higher price for the Lourdes Tide, but he did.

*Texas Theft Liability Act Claims*

21.     Defendants' contention is that no facts were shown that Defendants received the money. However, the petition is replete with facts regarding the wire transfers being made to Defendants at Howell's request and instruction. *Petition*, ¶¶8-13. Such a point is also questionable since TM had the $70,000 for the Soyo Tide refunded although the payments went to Sonatide Marine, Ltd. *Plf. Ex. A*, pp. 006-007. If there were no misrepresentations, why were the funds kept until after a lawsuit was filed? If Sonatide Marine, Ltd. was a different party completely, how did TM manage to get the refund? These facts support the allegation TM is involved.

22.     The petition also alleges Howell was the one conducting the transactions through his employment with TM. Defendants have appropriated the funds from Edam Gbere, without effective consent, and continue to exercise control over the funds despite requests to return them. As alleged, no contract allowed for Defendants to keep these funds. *Petition*, ¶22. Since Howell canceled two of the contracts, the deposits should have been refunded immediately.

*Assumed Names*

23.     Defendants also claim Plaintiff, Donald John-Miller, was not a proper party to the contracts. This is false as shown by the assumed name filing Plaintiff has maintained in Harris County, Texas, as well as the allegations in the petition that the other entities are his as well. *Plf. Ex. B*. Edam Gbere was the party that made the payments in all of the wire transfers at issue. *Plf. Ex. A*.

Conclusion

24.     Since Plaintiff has made more than sufficient allegations to support his claims, Plaintiff asks the Court to deny Defendants' motion to dismiss and retain the case on the Court's docket.

Respectfully submitted:

EASLEY LAW FIRM, P.L.L.C.

_____
Toby C. Easley, Attorney-in-Charge
State Bar No. 00787411
Southern District Texas No. 21093
1214 Elgin Street
Houston, Texas 77004
Voice: 713-223-4000
Fax: 281-588-2665
E-mail: Toby@Toby-Law.com
ATTORNEYS FOR PLAINTIFF

## Certificate of Service

I certify that a true and correct copy of the foregoing document has been sent to the following counsel of record by electronic notification through this Court's CM/ECF system:

Jennifer David
William C. Baldwin
R. Scott Jenkins
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70710-5100
Voice:      504-582-8315
Fax:         504-589-8315
Email:      jdavid@joneswalker.com
                 wbaldwin@joneswalker.com
                 sjenkins@joneswalker.com

Justin Quin
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, TX 77002
Voice:      713-437-1877
Fax:         713-437-1949
Email:      jquin@joneswalker.com

(Counsel for Defendants Tidewater Marine, LLC and Austin Howell)

Dated:  October 15, 2019

_____
Toby C. Easley