## AGREEMENT OF PURCHASE AND SALE

This Agreement is made and entered into as of this __17th__ day of __July__, 2019, by and between SONATIDE MARINE, LTD. (hereinafter called "Owner") and D1 INTEGRATED SERVICES (hereinafter called "Purchaser").

**SECTION 1 - SALE.** Owner agrees to sell and the Purchaser agrees to purchase the M/V SOYO TIDE, IMO Number 9371634, (hereinafter called "Vessel"), subject to the terms, covenants and conditions hereinafter set forth.

**SECTION 2 - PURCHASE PRICE.** The purchase price for the Vessel shall be the sum of Seven Hundred Fifty Thousand and 00/100 U.S. Dollars (USD $750,000.00), (hereinafter called the "Purchase Price").

**SECTION 3 - PAYMENT OF EARNEST MONEY & PURCHASE PRICE.** Within five (5) days after the execution of this Agreement, Purchaser shall deposit with Owner ten (10%) percent of the Purchase Price (hereinafter called the "Earnest Money"). At the time this sale is closed, Purchaser shall pay Owner the balance of the Purchase Price. Payments are to be made by wire transfer to: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the benefit of SONATIDE MARINE, LTD.

**SECTION 4 - INSPECTION & CLOSING.** The Purchaser acknowledges that it has already done an afloat inspection of the Vessel and that, except for the underwater portions of the Vessel (which Purchaser has not yet viewed), Purchaser is satisfied with the condition of the Vessel for all purposes. The Purchaser may, at its own cost and within twenty (20) days from the date hereof, drydock the Vessel or utilize divers to inspect the underwater portions of the Vessel and Owner will cooperate with Purchaser to make the Vessel available for such bottom inspection. In the event that Purchaser's inspection of the underwater portions of the Vessel reveals damage or deterioration which materially affects the value of the Vessel and which could not previously have been ascertained on reasonable inspection of the Vessel while afloat, Purchaser may, within forty-eight (48) hours after the Vessel has been so inspected, cancel this Agreement in writing to Owner. Owner and Purchaser are, of course, free to agree on a new Purchase Price to take into account the damage and/or deterioration; but, in the event of cancellation, this Agreement shall become null and void and of no further force and effect with neither party having any further rights or liabilities hereunder except Purchaser's obligation to pay the Vessel's bottom inspection expenses and Owner's obligation to return the Earnest Money to Purchaser. Should no notice of cancellation be given to Owner within the forty-eight (48) hour-period as aforesaid, Purchaser shall conclusively be obligated to pay the balance of the Purchase Price within ten (10) days after such bottom inspection, or in case such bottom inspection is never held, within thirty (30) days after the date of this Agreement. Title to the Vessel and possession thereof shall not be transferred to Purchaser until the aforesaid Purchase Price shall have been received by Owner in full. Similarly, until the aforesaid Purchase Price shall have been received by Owner in full, no work, repairs, or improvements may be carried out on or to the Vessel by Purchaser, nor may Purchaser open up or dismantle any of the Vessel's machinery or equipment. If Purchaser desires to have a formal face-to-face closing, such closing shall be held at Owner's representative's offices in Walvis Bay, Namibia.

Upon receipt of the full Purchase Price, Owner shall convey to Purchaser a Bill of Sale in suitable form and substance and shall deliver the Vessel to Purchaser in accordance herewith. Purchaser plans to transfer the Vessel to Nigeria flag; and Owner, after securing the permission of the Vessel's flag state for

**EXHIBIT C**

Owner to sell the Vessel for transfer to the intended flag, shall deliver to Purchaser at the sale closing a letter from Owner undertaking to provide a deletion certificate from the Vessel's flag state as soon as reasonably possible after the sale closing.

**SECTION 5 - LIQUIDATED DAMAGES.** Except as otherwise specifically provided herein, If Purchaser fails to pay the Purchase Price in accordance with Section 4 hereof for any reason whatsoever, this Agreement shall terminate; provided, however, that Owner shall retain the Earnest Money as liquidated damages, and provided that Purchaser's obligation to pay the bottom inspection expenses under Section 4 hereof shall survive said termination.

**SECTION 6 – EXCLUSION OF WARRANTIES.** The sale contemplated hereby shall be on an "as is, where is" basis without any warranties or representations of any kind or nature whatsoever, whether express or implied, concerning the condition, seaworthiness, merchantability, or fitness for any purpose of the Vessel or its appurtenances. By acceptance of the delivery of the Vessel as herein provided, the Purchaser agrees to specifically waive all laws of redhibition and implied warranty provided by Louisiana law or the law of any country, province, state, or political subdivision thereof, including any and all warranties against vices or defects or fitness for any particular purpose or use whatsoever. The only warranty which Owner agrees to make is a warranty that the Vessel is being sold free and clear of any and all liens or encumbrances.

**SECTION 7 – TAXES AND COMMISSIONS.** It is the belief of Purchaser and Owner that the sale contemplated hereby shall be exempt from Sales Tax by virtue of the fact that such sale is an "occasional or isolated sale" by Owner, who is merely disposing of used equipment previously utilized in its business. However, it is agreed that any taxes (except income taxes) assessed by the government of any country, territory, state or political subdivision thereof against Purchaser and/or Owner on account of or in connection with the sale shall be for Purchaser's account.

At the time of sale closing, Purchaser agrees to pay any separately-agreed sales commission(s) Adrian Monsi of Houston, Texas, U.S.A.; and Purchaser agrees to protect, defend, indemnify, and hold harmless Owner from and against any and all claims, suits, and demands for sales commission(s) and/or fee(s) made by any broker(s) and/or sales agent(s) claiming to be involved in connection with the sale transaction contemplated by this Agreement.

**SECTION 8 - DESTRUCTION OF VESSEL PRIOR TO CLOSING.** In the event the Vessel is substantially damaged or destroyed prior to closing for any reason, other than due to the negligence of Purchaser, this Agreement shall immediately become null and void, and the Earnest Money heretofore paid by Purchaser to Owner pursuant to this Agreement (less the outstanding bottom inspection costs, if any) shall be returned by Owner to Purchaser.

In the event of a partial loss, either party hereto has the option to cancel this Agreement within forty-eight (48) hours of receiving notice of such partial loss. If such cancellation occurs, the Earnest Money heretofore paid by Purchaser to Owner pursuant to this Agreement (less the outstanding bottom inspection costs, if any) shall be returned by Owner to Purchaser. In the event of such partial damage or loss, instead of cancellation, the parties may simply renegotiate the Vessel's Purchase Price to reflect such partial damage or loss.

**SECTION 9 - DELIVERY, SPARES & FUEL.** The Vessel shall be delivered to the Purchaser at Walvis Bay, Namibia or such other port or place as may be mutually agreed by the parties, substantially in the same condition as she was at the time of Purchaser's inspection (see Section 4 above), together with her

EXHIBIT C

appurtenances and spares aboard at the time of Purchaser's inspection, If any. Spare parts stored ashore, except those unique to the Vessel, shall be excluded from the sale contemplated hereby. If any useable fuel and/or lubricants remain on board at the time of delivery, the amount thereof shall be determined in a mutually satisfactory manner; and Purchaser shall, separately purchase such fuel and/or lubricants from Owner at prices current on the date of delivery at the port or place or delivery.

**SECTION 10 - REMOVAL OF INSIGNIA & CHANGE OF NAME.** Within thirty (30) days after the sale closing, Purchaser shall change the Vessel's name and paint/color scheme which is proprietary to Owner, and also shall remove the Owner's anchor "T" trademarks/logos from the Vessel.

**SECTION 11 – PURCHASER'S REPRESENTATIONS.** The Purchaser warrants and represents to Owner that for a period of three (3) years from the date hereof Purchaser will not use the Vessel in the offshore oilfield marine service business in competition with Owner or with Owner's parent, subsidiary, affiliated, joint venture or related companies anywhere in the world. Purchaser further warrants and represents that it will similarly bind all subsequent purchasers and charterers during the period established in the previous sentence and that it will require, by written contract, all such subsequent purchasers and charterers, during that period, to pass this non-competition restriction on to their purchasers and charterers, of any tier. Purchaser further represents and warrants to Owner that Purchaser has not been induced to enter into this Agreement by any prior oral or written representations (whether innocently or negligently made) regarding the condition, specifications or capabilities of the Vessel.

**SECTION 12 - ASSIGNMENT.** Purchaser may, with the consent of Owner, which shall not be unreasonably refused, assign this Agreement in whole or in part.

**SECTION 13 - GOVERNING LAW.** This Agreement shall be construed in accordance with the laws of the State of Louisiana, U.S.A.

**SECTION 14 - ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings with respect to the matters contained in it.

**SECTION 15 - NOTICES.** All notices or communications required or permitted under this Agreement shall be deemed to have been duly given if: (1) Delivered by hand, courier or mail; or (2) sent by email to the following address:

A.  If to Owner, to:
    Sonatide Marine, LTD
    Edificio Rei Katyavala
    Rua Rei Katyavala, s/n
    Entrada B, 13 Andar
    Ingombota, Luanda, Angola
    Attn: Maria Samuel
    Email: maria.samuel@sonatide.co.ao

    With a cc to:
    Austin Howell
    c/o Tidewater Inc.
    6002 Rogerdale Rd., Suite 600
    Houston, TX 77072, U.S.A.
    Email: ahowell@tdw.com

    Elton Steen
    Email: esteen@tdw.com

    Mark Handin
    Email: mhandin@tdw.com

    Bob Instone
    Email: binstone@tdw.com

**EXHIBIT C**

B.  If to Purchaser, to:  
D1 Integrated Services  
21 Port Ave, Onne  
River State, Nigeria  
Attn: Mr. Lewis Nekabari Miller  
Director  
Email: millerloui@yahoo.com.

With a cc to:  
Mr. Adrian Monsi  
15335 Park Row, Suite 908  
Houston, TX 77084  
Email: adrianmonsiadrianmonsi@yahoo.com

**SECTION 16 - SUSPENSIVE CONDITIONS.** Notwithstanding anything to the contrary contained in this Agreement or in any prior discussions or negotiations (including prior drafts hereof) involving the sale of the Vessel, this Agreement shall have no force and effect until it has been signed by both parties and the Earnest Money has been received by Owner. In the event the Earnest Money is not received by Owner within five (5) days of both parties having signed this Agreement, this Agreement shall, unless otherwise agreed by the parties in writing, become void ab initio.

IN WITNESS WHEREOF, this Agreement is executed in duplicate original by the undersigned parties effective as of the date first hereinabove written.

WITNESSES:

[signature: Cheryl Porter]

[signature]

SONATIDE MARINE, LTD.  
(Owner)

By: [signature]  
Name: Mark Handin  
Title: Group B Director

[signature]

D1 INTEGRATED SERVICES  
(Purchaser)

By: [signature]  
Name: Lewis N. John-Miller  
Title: Director

**EXHIBIT C**